759 P.2d 83

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Douglas BONAPARTE,
Defendant–Appellant.**

No. 16882.

Court of Appeals of Idaho.

July 28, 1988.

Danny J. Radakovich, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen. by Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

## SUBSTITUTE OPINION

The Court's prior opinion, dated June 1, 1988, is hereby withdrawn.

BURNETT, Judge.

Upon a plea of guilty, Douglas Bonaparte was convicted of aggravated assault. He received an indeterminate sentence of five years. After moving unsuccessfully to withdraw his plea or to obtain a reduction of sentence, Bonaparte appealed. We are presented with four issues: (1) whether the district court erred in exercising jurisdiction despite Bonaparte's alleged status as an American Indian; (2) whether the judge abused his discretion in denying Bonaparte's motion to withdraw the guilty plea; (3) whether the sentence pronounced in the judgment was excessive; and (4) whether the judge, in denying the postjudgment motion for reduction of sentence, erred by refusing to consider additional information regarding Bonaparte's character. For reasons explained below, we affirm the judgment of conviction. However, we vacate the order denying the motion for reduction of sentence, and we remand the case for further proceedings on that motion.

The underlying facts may be stated briefly. Clearwater County Sheriff's deputies were dispatched one night to the Bonaparte residence in response to complaints of a domestic disturbance. Upon arriving, the officers ascertained that Douglas Bonaparte was inside the house, carrying a loaded rifle. A shot was fired. The officers took cover. One of the officers then approached the house and, while passing a bedroom window, he saw Bonaparte inside.

According to the officer, Bonaparte spotted him, raised the rifle and fired in his direction. A round passed through the structure's outer wall near the window, narrowly missing the officer. Shortly thereafter, Bonaparte was arrested.

The prosecutor initially charged Bonaparte with assault with intent to commit murder. However, the charge subsequently was reduced to aggravated assault under I.C. §§ 18–901, 905. Bonaparte pled guilty and was sentenced to an indeterminate period not exceeding five years. After the sentence was imposed, Bonaparte obtained another attorney. His new counsel filed motions seeking to withdraw the guilty plea and seeking a reduction of sentence under I.C.R. 35. Both motions were denied. This appeal followed.

### I

We first examine Bonaparte's contention that the district court lacked jurisdiction over him. He claims to be an American Indian and, as such, subject only to federal jurisdiction when charged with a felony committed "within the Indian country." 18 U.S.C. § 1153; *see generally* F. COHEN, HANDBOOK OF FEDERAL INDIAN LAW, ch. 6 (1982 ed.) (hereafter "COHEN"). The state concedes that the crime occurred on Indian trust land and would be governed by federal law if Bonaparte were an Indian. But the state argues that he is not.

There appears to be no simple, unifying legal test for determining an individual's status as an American Indian. Many federal statutes define Indian status for administrative purposes, such as eligibility for social programs directed toward Indians. *See, e.g.,* 25 U.S.C. § 1603(c) (Indian Health Care Improvement Act). However, federal criminal jurisdiction statutes contain no specific definition. Neither do they embody criteria prescribed for administrative purposes in noncriminal statutes. COHEN, ch. 1, § C.

In the absence of a statutory definition, the courts have developed a methodology for resolving Indian status disputes

in criminal cases. As recently stated by the Oklahoma Court of Criminal Appeals:

Two elements must be satisfied before it can be found that [a defendant] is an Indian under federal law. Initially, it must appear that he has a significant percentage of Indian blood. Secondly, the [defendant] must be recognized as an Indian either by the federal government or by some tribe or society of Indians.

*Goforth v. State,* 644 P.2d 114, 116 (Okl.Ct. App.1982). Similar expressions of the two-part test appear in *United States v. Dodge,* 538 F.2d 770, 786 (8th Cir.1976), *cert. denied sub nom. Cooper v. United States,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 547 (1977), and *Makah Indian Tribe v. Clallam County,* 73 Wash.2d 677, 440 P.2d 442 (1968). *See also* COHEN at 19–20. *Compare* Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze,* 18 ARIZ.L.REV. 503, 513–520 (1976) (suggesting that social recognition be added to tribal or federal recognition).

█ Here, Bonaparte possessed a combined $^{15}$/$_{64}$ths degree of Indian blood. We need not decide whether this is "significant" for jurisdictional purposes, because we believe Bonaparte failed to satisfy the recognition element of the two-part test. He was not an enrolled member of any tribe.[1] Furthermore, the local tribe with which he claimed some affiliation—the Nez Perce—required a one-quarter degree of Indian blood for enrollment. Bonaparte fell 1/64th short. Although this was a narrow difference, the tribe was required to draw a line somewhere. The line was not drawn unreasonably. It is common for tribes to specify one-quarter Indian blood as a standard for enrollment. COHEN at 22–23.

█ Bonaparte argues that a lack of tribal recognition should not be fatal to his claim of Indian status. He contends that he is recognized by the federal government because he is eligible for some social programs and because he is a "descendant" of

an enrolled tribal member, residing within the boundaries of a reservation, as denoted in the Indian Reorganization Act (IRA) of 1934. *See* 25 U.S.C. § 479. However, Bonaparte's eligibility for social programs would appear to be selective at best. Many programs require tribal membership or a higher degree of Indian blood than Bonaparte possesses. COHEN at 23–24. In any event, as we have noted, the criteria governing social program eligibility do not embody the objectives of criminal jurisdiction. Neither do we construe the IRA to place the imprimatur of Indian status, for criminal jurisdiction purposes, upon all present-day "descendants" residing on reservations, irrespective of their degree of Indian blood or their lack of tribal recognition. In this regard it is noteworthy that Courts of Indian Offenses, which try Indians for nonfelony cases on reservations, do not have jurisdiction over every "descendant." Rather, they have jurisdiction over a "person of Indian descent who is a member of any recognized Indian tribe...." 25 C.F.R. § 11.2(c).

Bonaparte would have us hold, in effect, that the two-part test does not always have two parts—that a lack of tribal or federal recognition does not invariably defeat Indian status. We acknowledge that some federal decisions contain statements that tribal enrollment is not dispositive on the question of jurisdiction. *E.g., United States v. Broncheau,* 597 F.2d 1260 (9th Cir.) *cert. denied* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979); *United States v. Indian Boy X,* 565 F.2d 585 (9th Cir.1977) *cert. denied* 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978); *United States v. Ives,* 504 F.2d 935 (9th Cir.1974), *vacated on other grounds,* 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975). However, in none of those cases was it held that federal jurisdiction existed in the absence of tribal or federal recognition. In *Ives* and *Indian Boy X,* the name of each defendant appeared on a tribal membership roll. In *Broncheau* the court merely held that a

---

1. Bonaparte would have been entitled to recognition as an Indian had he been a member of any tribe, regardless of the reservation on which

he resided. *State v. Allan,* 109 Idaho 918, 607 P.2d 426 (1980).

federal indictment is sufficient if it alleges the defendant to be an "Indian;" it need not specify an "enrolled Indian." We do not think these federal cases, or others like them, alter the two-part test of Indian status. At most, they simply suggest that a mistaken enrollment does not confer federal jurisdiction, nor does an unreasonable denial of tribal recognition preclude federal jurisdiction. But those circumstances are not presented in the case before us.

Bonaparte lacks tribal membership because he fails to meet a reasonable enrollment requirement. We find no other substantial indicia of federal recognition of Bonaparte's Indian status for the purpose of criminal jurisdiction. Consequently, we hold that federal jurisdiction does not exist. The judge properly exercised state jurisdiction in this case.

## II

■ We next discuss Bonaparte's motion to withdraw his plea of guilty. He asserts that the plea was not entered voluntarily, knowingly and intelligently, as required by I.C.R. 11(c). Specifically, Bonaparte contends that he was not adequately informed of the nature of the charge against him because the judge gave no explanation of any specific intent required for aggravated assault.

However, aggravated assault under I.C. §§ 18–901, 905, is *not* a specific intent crime.[2] It is a general intent crime. *People v. Rocha*, 3 Cal.3d 893, 92 Cal.Rptr. 172, 479 P.2d 372 (1971). *See also State v. Missenberger*, 86 Idaho 321, 386 P.2d 559 (1963) (former statute, proscribing assault with deadly weapon, contains no language indicating that any specific intent is an element of the offense). Where an aggravated assault allegedly is committed with a deadly weapon, the requisite intent has been described by the California Supreme Court as follows (applying a statute substantially similar to pertinent sections of the Idaho Code):[3]

An assault is an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another, or in other words, it is an attempt to commit a battery (1 Witkin, Cal. Crimes (1963) § 255, p. 241; *People v. McCaffrey*, 118 Cal.App.2d 611, 258 P.2d 557.) Accordingly, the intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being "any willful and unlawful use of force or violence upon the person of another." (Pen.Code., § 242.) We conclude that the criminal intent which is required for assault with a deadly weapon and set forth in the instructions in the case at bench, is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. Given that intent it is immaterial whether or not the defendant intended to violate the law or knew that his conduct was unlawful. The intent to cause any particular injury (*People v. Carmen, supra*, 36 Cal.2d 768, 776, 228 P.2d 281), to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary.

*People v. Rocha, supra*, 479 P.2d at 376–77 (footnotes omitted).

Moreover, our Supreme Court has held that the intent element of assault with a deadly weapon may be satisfied by proof of reckless disregard for the victim's safety. *State v. Patterson*, 60 Idaho 67, 88 P.2d 493 (1939). Accordingly, when entering his plea, Bonaparte need only have understood that the state was required to prove he intended to cause harm when firing his rifle or that he fired it with reckless dis-

---

**2.** Bonaparte was charged only with aggravated assault, not with the more particular—and more serious—crime of aggravated assault upon a law enforcement officer. *See* I.C. § 18–915. We express no view as to whether such a charge would have required proof of a specific intent.

**3.** Idaho Code § 18–905(a) defines an aggravated assault as an assault with a deadly weapon without intent to kill. An assault is defined as: "[a]n unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another." I.C. § 18–901(a). Subsection (b) contains an additional definition based upon threat by word or deed, inducing fear of imminent violence. For purposes of this discussion, we focus upon subsection (a).

regard for the risk of injury he thereby created.

We have reviewed the record to determine whether Bonaparte was so apprised. Our review has been conducted in light of I.C.R. 11(c)(4). This rule provides that before a guilty plea is accepted, the record of the entire proceedings, including "reasonable inferences drawn therefrom," must show that the defendant was informed of the nature of the charge against him. In the proceedings below, the district judge did not explicitly define the intent element of the alleged crime. However, the judge did state the offense charged and he enunciated Bonaparte's rights, including the right to insist that the state meet its burden of proof. The judge also asked the prosecutor to narrate the underlying facts. The prosecutor responded as follows:

> After arriving there [the deputy] approached the residence, was looking through a window to the inside of the residence, saw Douglas Bonaparte walk into the room carrying a rifle; that Douglas Bonaparte saw him about the same time [the deputy] saw Mr. Bonaparte. The defendant and—was bringing the rifle to bear on [the deputy].

> [The deputy] seen [sic] the rifle being brought to bear on him, jumped to his right of the window. As he was jumping to the right of the window he heard a rifle—heard the rifle discharge and was sprayed with splinters from the rifle going through the—bullet from the rifle going through the outside wall of the Bonaparte residence, after which time [the deputy] apprehended Douglas Bonaparte still carrying the rifle which had been earlier discharged.

We believe a reasonable inference to be drawn from this recitation is that Bonaparte was informed of the gravamen of the charge against him. It was clear that the state would undertake to prove he "brought the rifle to bear" on the deputy and fired it in the deputy's direction. An intent to do harm, or a reckless disregard for the risk of harm, was not explicitly recited but it obviously was implied. We conclude that Bonaparte was adequately informed of the nature of the charge. Therefore, the plea was entered voluntarily. The district judge did not abuse his discretion in denying the motion to withdraw the plea.

### III·

We now turn to the sentence imposed. The five-year indeterminate sentence was within the judge's statutory authority. *See* I.C. § 18–906. Our standards for reviewing a statutorily authorized sentence are well settled. *See State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App. 1982). They need not be repeated at length. We presume, for the purpose of appellate review, that Bonaparte will serve at least twenty months in confinement under his sentence. *Id.* The question is whether such a period of confinement is reasonable.

Our review focuses upon the nature of the offense and on the character of the offender. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). Aggravated assault by means of a deadly weapon is a serious offense. Bonaparte chose to fire a rifle in the direction of another human being. The result easily could have been a homicide. Bonaparte's presentence report revealed a long string of minor crimes—most of them related to alcohol—and one previous felony conviction. When sober, Bonaparte was a dependable person and employee; when intoxicated, he could be dangerous. The report identified Bonaparte as a problem drinker.

The trial judge noted the seriousness of the offense, as well as Bonaparte's prior record. The judge also acknowledged the role played by alcohol in Bonaparte's misconduct. He concluded that incarceration was the only sentencing alternative reasonably available to protect society from further danger. Faced with a choice between indeterminate and fixed sentences, the judge chose the former. He thereby created a possibility of parole if Bonaparte's rehabilitative progress in prison were satisfactory.

Based on the present record, we think the reasons given by the district judge for

the sentence he imposed were sound. Confinement for at least twenty months is not an excessive safeguard against the manifest danger caused by Bonaparte's proclivity to drink and lose control. We find no abuse of sentencing discretion. Accordingly, the judgment imposing the sentence is affirmed.

## IV

■ Finally, we consider whether Bonaparte's Rule 35 motion was improperly denied. Although a written order denying the motion does not appear in the record, a reporter's transcript shows that the motion was denied from the bench. The principal point of contention is whether the judge, when ruling on the motion in open court, unduly restricted the evidence Bonaparte was allowed to present.

Bonaparte sought to introduce testimony from the Clearwater County jailer regarding his good behavior while in jail, as well as testimony from relatives concerning the nature and possible treatment of his alcohol problem. The trial judge refused to accept any evidence. He said, "The opportunity was presented to present any evidence at the time of sentencing. I had a presentence investigation, carefully considered it. I'm not going to sentence everybody twice."

Although a Rule 35 motion is addressed to the judge's discretion, and although the judge may choose whether or not to conduct an evidentiary hearing on the motion, he may not wholly disregard proffered information about the defendant simply because it goes beyond the evidence presented at sentencing. On this point we respectfully disagree with Judge Swanstrom's dissenting opinion, *post*, in which he argues that a Rule 35 motion must rest upon information which was not, and could not have been, presented at sentencing. Our cases do not support such a cramped view of Rule 35, and we decline to adopt it today.

When a judge refuses to consider any additional information, he erroneously narrows the scope of his own discretion. *See generally State v. Torres*, 107 Idaho 895, 693 P.2d 1097 (Ct.App.1984). In this case we do not know, and we decline to speculate, whether the proffered testimony might have been submitted in affidavit form if the judge had not so emphatically refused to consider any matters beyond the original sentencing record.[4] Nor do we know what effect, if any, such additional information might have had upon the judge's view of an appropriate sentence. "[W]hen a judge unduly narrows the scope of his discretion, by focusing upon improperly limited information, the proper appellate response is not to usurp such discretion by exercising it ourselves; rather, the proper course is to remand the case for reconsideration." *Id.* at 898, 693 P.2d at 1100.

We conclude that the Rule 35 motion should be reconsidered in light of all pertinent information that Bonaparte wishes to present. The judge may conduct a hearing on the motion or he may direct Bonaparte to submit the information in writing. By remanding the case, we intimate no view as to whether a sentence reduction should be granted.

The judgment of conviction is affirmed, subject to any reduction of sentence that might be ordered under Rule 35. The case is remanded for proceedings consistent with this opinion.

WALTERS, C.J., concurs.

SWANSTROM, Judge, concurring in parts I, II and III, but dissenting as to part IV.

This is not a *Torres* situation where the judge hearing the Rule 35 motion mistakenly believed he was constrained to consider only the information which had been available to the sentencing judge. Here, six days after he had been sentenced, Bonaparte, through new counsel, filed a motion

---

4. An affidavit from the county jailer eventually was filed along with a motion for stay of execution pending appeal, which was denied. By that time, of course, Bonaparte's Rule 35 motion also had been denied. The record before us contains no other affidavits pertinent to the Rule 35 motion.

for reduction of sentence. In support of the motion, the sentencing judge was offered the testimony of a jailer regarding Bonaparte's good behavior in jail and testimony from relatives concerning the effect of alcohol on his behavior. This information was not new; it was available at the time' of sentencing. Bonaparte has not shown any reason why it was not presented earlier when other witnesses testified in aggravation and mitigation of the sentence. Moreover, the information added little, if anything, to that which the judge had at the time of sentencing. The effect of alcohol on Bonaparte's behavior was obvious. Treatment for this problem was discussed in the presentence report and at the sentencing hearing. The jailer submitted a letter which was given to the judge before the sentencing. Testimony about Bonaparte's good behavior in jail would hardly give the judge any new sentencing dimension or alternative. Faced with this, the judge simply declined to go through the time-wasting exercise of a hearing. This decision was not based on a mistaken notion of the law or of discretion. Rather, the decision shows deliberate use of the discretionary power allowed by I.C.R. 35. Because there was no abuse or misapplication of that discretion, I would affirm the order denying the motion to reduce the sentence.