199 P.3d 771

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jake BEASLEY, Defendant–Appellant.**

No. 34698.

Court of Appeals of Idaho.

Dec. 23, 2008.

Echohawk Law Offices, Pocatello, for appellant. Paul C. Echohawk argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

GUTIERREZ, Chief Judge.

Jake Beasley appeals from his judgment of conviction for felony driving under the influence (DUI). Specifically, he appeals the denial of his motion to dismiss or in the alternative to suppress evidence. We affirm.

## I.

## BACKGROUND

At approximately 10:30 at night in February, 2007, Idaho State Police dispatch received several calls from concerned citizens reporting a white passenger car driving north-bound on the south-bound side of Interstate 15 in Bannock County. Trooper Mike Winans was dispatched towards the last known location of the vehicle. However, before he located the vehicle, officers from the Fort Hall Police Department intercepted and stopped the car on Interstate 15 within the boundaries of the Fort Hall Indian Reservation. The driver of the car, Beasley, was taken from the car and placed in handcuffs.

When Trooper Winans arrived at the scene of the stop, he noted that Beasley reeked of alcohol, had urinated in his pants and had fresh vomit on him. Beasley's speech was slurred, and he kept repeating that he didn't know what he had done wrong. Trooper Winans and the Fort Hall police officers held

a brief discussion about who should take Beasley, after which the tribal handcuffs were removed and Trooper Winans arrested Beasley.

Beasley was charged with driving under the influence of alcohol and/or drugs, a repeated offense, I.C. §§ 18–8004 and 18–8005(7), a felony. He was also alleged to be a persistent violator, I.C. § 19–2514. Prior to trial, Beasley moved for dismissal of the charges, or in the alternative to suppress all evidence obtained from his alleged illegal arrest. Beasley and the prosecutor provided the court with stipulated facts and exhibits for purposes of the motions. Those facts included that Beasley is a certified member of the Shoshone–Bannock tribes, and resides on the Fort Hall Indian Reservation. Accordingly, Beasley asserted that he was illegally arrested by Trooper Winans because his initial arrest occurred on the reservation, by tribal police officers. Since Trooper Winans assumed custody of Beasley without initiating extradition proceedings in tribal court, Beasley asserted that the arrest by Trooper Winans violated his Fourth Amendment rights and interfered with the sovereignty of the Shoshone–Bannock tribes.

The district court denied Beasley's motions. He thereafter entered a guilty plea to the felony DUI, reserving the right to appeal the denial of his motions, and the state dismissed the persistent violator allegation. This appeal followed.

## II.

## DISCUSSION

■ Beasley moved to dismiss the charges against him pursuant to Idaho Criminal Rule 12(b), asserting a lack of personal jurisdiction in the district court of Bannock County. Personal jurisdiction refers to a court's power to bring a person into its adjudicative process whereas subject matter jurisdiction refers to jurisdiction over the nature of the case and the type of relief sought. *State v. Ambro*, 142 Idaho 77, 79, 123 P.3d 710, 712 (Ct.App.2005) (citing BLACK'S LAW DICTIONARY 870 (8th ed.2004)). Thus, without personal jurisdiction, the court has no person to hold accountable and, without subject matter jurisdiction, the court has no alleged crime to hold the person responsible for. Id. at 79–80, 123 P.3d at 712–13. Beasley did not challenge the district court's authority to hear a criminal DUI case, but only the court's authority over his person due to the failure to follow tribal extradition procedures. We exercise independent review over the issue of a lower court's jurisdiction. *State v. Crisman*, 123 Idaho 277, 279, 846 P.2d 928, 930 (Ct.App.1992); *see also In re Hanson*, 121 Idaho 507, 826 P.2d 468 (1992).

■ Criminal jurisdiction over Indians is divided among federal, state, and tribal governments. *State v. Mathews*, 133 Idaho 300, 310, 986 P.2d 323, 333 (1999). Whether one or more of these sovereigns possess criminal jurisdiction in a particular instance depends upon the type of offense committed, where the offense was committed, and whether either the perpetrator or the victim is Indian. *Id.* Although criminal matters within the boundaries of an Indian reservation are generally within the exclusive jurisdiction of the tribal courts, Congress has the power to define the nature of federal, state, and tribal criminal jurisdiction within Indian Country. Id. at 311, 986 P.2d at 334. In 1953, the United States Congress enacted Public Law 280, which permitted states to assume jurisdiction over Indian affairs by affirmative legislative action. *See* Public Law No. 280, § 7, 67 Stat. 588 (1953). In 1963, pursuant to Public Law 280, the State of Idaho enacted I.C. § 67–5101 which states:

> The state of Idaho, in accordance with [Public Law 280] hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian country located within this state, as Indian country is defined by title 18, United States Code 1151, and obligates and binds this state to the assumption thereof:
>
> A. Compulsory school attendance
>
> B. Juvenile delinquency and youth rehabilitation
>
> C. Dependent, neglected and abused children
>
> D. Insanities and mental illness

E. Public assistance

F. Domestic relations

G. *Operation and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivisions thereof.*

(Emphasis added). Public Law 280 was later repealed by the Civil Rights Act of 1968 and replaced by 25 U.S.C. § 1321, which requires the prior consent of an Indian tribe to create additional state jurisdiction. *Mathews,* 133 Idaho at 311, 986 P.2d at 334. However, the limiting language of section 1321 does not limit Idaho's jurisdiction to enforce its motor vehicle laws upon Indian reservations because that jurisdiction had been granted and assumed prior to enactment of section 1321. *State v. McCormack,* 117 Idaho 1009, 1013, 793 P.2d 682, 686 (1990). Therefore, the State of Idaho has authority to enforce the motor vehicle laws of this state in Indian Country pursuant to the consent provided in Public Law 280 and as implemented by the Idaho Legislature in I.C. § 67–5101. *Id.* at 1014, 793 P.2d at 687.

■ Beasley asserts that his arrest by Trooper Winans was illegal because extradition procedures were not followed, and therefore the district court had no jurisdiction over him. In support thereof, Beasley cites to *Benally v. Marcum,* 89 N.M. 463, 553 P.2d 1270 (1976). There the New Mexico Supreme Court concluded that where extradition proceedings were not instituted following arrest by City Police within the reservation, the arrest violated Navajo tribal sovereignty, was illegal and therefore, the state court lacked jurisdiction over Benally, an enrolled member of the Navajo tribe.

The Shoshone–Bannock tribal code, Chapter XX Rules of Criminal Procedure, provides:

Section 9—Extradition. Whenever the Chief Judge of the Shoshone–Bannock Tribal Court is informed and believes that an Indian has committed a crime outside of Indian Country and is present on the Fort Hall Indian Reservation using it as an asylum from prosecution by Federal, State or Tribal authorities off the reservation, the Chief Judge may order any Shoshone–Bannock Tribal Police Officer to appre-hend such Indian and deliver him or her to the proper Federal, State or Tribal authorities after an appropriate hearing in Tribal Court, if such a hearing is requested by the subject in custody.

Section 9.1—Extradition Hearing. If any Indian is detained pursuant to Section 9 of this Chapter, and he or she demands a hearing, a hearing will be scheduled as soon as possible. At this hearing, if it appears to the Judge that there is no [sic] probable cause to believe that the Indian in custody will not receive a fair and impartial trial in the off-reservation court, the Judge shall order that the Indian be released from custody.

Section 9.2—Proof Required Before Extradition Proceedings Commenced. No demand for extradition shall be recognized by the Tribal Court, nor shall any hearing for extradition be scheduled, until the Court shall receive such demand in writing and accompanied by certified copies of the indictment, information or complaint together with a certified copy of the warrant issued.

■ Although it is true that the extradition provision provides the proper method for the state to obtain custody of a tribal member on the reservation, for a crime committed off the reservation, Beasley was not exclusively within tribal jurisdiction when he was arrested by Trooper Winans. Although Beasley was within the reservation boundaries, he was within a portion of the reservation over which the state exercises concurrent jurisdiction with the tribal police. I.C. § 67–5101(G). His location on Interstate 15 placed him within Trooper Winans's authorized jurisdiction. Extradition is necessary only when a person has left the jurisdiction where the crime occurred, so that the initial jurisdiction has no personal jurisdiction over him in the new jurisdiction. *See, e.g.,* I.C. § 19–4502. As Beasley never left Interstate 15, he never left the jurisdiction of Idaho law enforcement officials. Therefore, there was no need to institute tribal extradition proceedings in order for the state court to obtain personal jurisdiction over Beasley, and the extradition provisions of the Shoshone–Bannock tribal code did not apply.

■ Beasley also asserts that his arrest by Trooper Winans was illegal because tribal police arrested him first, and therefore the Shoshone–Bannock tribes acquired personal jurisdiction over him first. Extradition requirements are not triggered by the identity of the arresting officer, but rather by the location of the arrest. Beasley was not present on the Fort Hall Indian Reservation and using it as an asylum when he was stopped. The stop occurred in an area of concurrent jurisdiction. The fact that tribal officers were the first to stop Beasley, before he injured himself or innocent motorists, arose from a coordinated effort with State Police and does not alter the fact that the tribal extradition code is not triggered by these facts.

■ Trooper Winans's arrest of Beasley was constitutionally sound as well. He possessed probable cause to arrest Beasley without a warrant, *see, e.g., State v. Piro,* 141 Idaho 543, 545, 112 P.3d 831, 833 (Ct.App. 2005), and acted within his authorized jurisdiction. The arrest also did not violate tribal sovereignty because extradition was not required. Without an illegal arrest, there is no basis to dismiss the charges against Beasley. The district court did not err by denying Beasley's motion to dismiss. Because we conclude Beasley's arrest was lawful, the alternative motion to suppress evidence was also correctly denied.

### III.

### CONCLUSION

The district court did not err by denying Beasley's motion to dismiss. Trooper Winans was not outside his jurisdiction when he arrested Beasley, as the state and the Shoshone–Bannock tribes share concurrent jurisdiction over Interstate 15 where it crosses the Fort Hall Indian Reservation. Furthermore, the tribal extradition code does not apply to arrests by state agents in areas of concurrent jurisdiction. Therefore, the arrest was not illegal and the district court was not required to relinquish jurisdiction over Beasley. Beasley's judgment of conviction is affirmed.

Judge LANSING and Judge PERRY concur.