**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45196**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) **Boise, June 2018 Term** |
| v. | ) |
| | ) **Filed: July 27, 2018** |
| SHAULA MARIE GEORGE, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| Defendant-Respondent. | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

District court order granting motion to dismiss based on jurisdiction, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Russell J. Spencer argued.

Eric D. Fredericksen, Idaho State Appellate Public Defender, Boise, for respondent. Sally J. Cooley argued.

_____

BURDICK, Chief Justice

This is a jurisdictional dispute. Tribal police arrested Shaula Marie George ("George") for possession of methamphetamine on the Coeur d'Alene reservation. Upon discovery that George was not a member of the Coeur d'Alene Tribe, the case was referred to the Kootenai County district court. Thereafter, George filed a motion to dismiss based on lack of jurisdiction. The district court granted George's motion, finding that despite the fact that George was not eligible to become a member of the Coeur d'Alene Tribe, George was an Indian; thus, the district court did not have jurisdiction. We affirm.

On September 6, 2016, the Coeur d'Alene tribal police arrested George for possession of a controlled substance and drug paraphernalia with intent to use. However, upon discovery that George was not an enrolled member of the Coeur d'Alene Tribe, the tribal police referred the case to the state for prosecution.

1

On November 3, 2016, a criminal complaint was filed in the Kootenai County district court charging George with felony possession of a controlled substance. On February 24, 2017, George filed a motion and memorandum to dismiss for lack of jurisdiction. Therein, George claimed that although she was not eligible to enroll as a member of the Coeur d'Alene Tribe she was still an "Indian" because of her extensive ties to the Tribe, i.e., she was a daughter, granddaughter, and great granddaughter of enrolled members of the Coeur d'Alene Tribe; she had lived on the Coeur d'Alene reservation; the Coeur d'Alene Tribe had been paying her medical, dental, substance abuse treatment bills her entire life; she was eligible for housing and food assistance through the Tribe; she attended Coeur d'Alene tribal events and was provided free tickets; and her children would be enrolled in the Tribe. The State opposed the motion, asserting that because George was not eligible to enroll as a Coeur d'Alene Tribe member, George did not fall under the jurisdiction of the tribal courts; instead, the district court had jurisdiction.

On May 9, 2017, the district court issued its memorandum decision and order granting the motion to dismiss for lack of jurisdiction. After a lengthy analysis, the district court concluded that George was an Indian for jurisdictional purposes:

> Ms. George is for all intents and purposes an Indian. She has Indian blood which the Court determines to be substantial or significant at nearly twenty-two percent. Moreover, she has lived her entire life as a Coeur d'Alene Indian. She is not an enrolled member of the Tribe and does not qualify to receive royalties from the Coeur d'Alene Casino based on the Tribe's determination to limit the number of persons who qualify for royalties. In every other way, however, she lives as and is recognized as an Indian. She qualifies and receives benefits available only to Indians. She has lived her whole life on the reservation. Her children are being enrolled as tribal members. She has participated in tribal social and cultural events and activities throughout her life.

Regarding the State's concern that the Tribe would not prosecute George because it only prosecuted enrolled Tribe members, the district court recognized that as a state court it either had jurisdiction or it did not, and that jurisdiction was not based on whether other agencies had jurisdiction or exercised discretion in determining whether to prosecute. On May 16, 2017, the district court entered an order dismissing the case for lack of jurisdiction. The State timely appealed. We affirm the district court's dismissal.

## I. ISSUE ON APPEAL

1. Whether the district court erred in finding it lacked jurisdiction over George due to her Indian status when she is not eligible to become a member of the Coeur d'Alene Tribe.

## II. STANDARD OF REVIEW

Issues concerning the district court's jurisdiction are issues of law, over which appellate courts exercise free review. *State v. Ambro*, 142 Idaho 77, 79, 123 P.3d 710, 712 (Ct. App. 2005) (citing *State v. Rogers*, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004)).

## III. ANALYSIS

### A. The district court correctly found that it lacked jurisdiction over George.

The State argues that the district court erred by finding that it lacked jurisdiction over George; specifically, the State maintains that because George is not eligible for membership in the Coeur d'Alene Tribe, she cannot be considered an Indian for purposes of jurisdiction. In support of this the State points out that the Coeur d'Alene Tribe has itself determined that George is not an Indian for purposes of tribal criminal jurisdiction.

"Criminal jurisdiction over Indians is divided among federal, state, and tribal governments." *State v. Beasley*, 146 Idaho 594, 596, 199 P.3d 771, 773 (Ct. App. 2008) (citing *State v. Mathews*, 133 Idaho 300, 310, 986 P.2d 323, 333 (1999)). "Whether one or more of these sovereigns possess criminal jurisdiction in a particular instance depends upon the type of offense committed, where the offense was committed, and whether either the perpetrator or the victim is Indian." *Id*. On appeal, the parties are not disputing the type of offense committed or where the offense was committed; rather, the parties dispute whether George is an Indian.

To determine whether a defendant is an Indian for jurisdictional purposes courts have applied some variation of a test developed in *United States v. Rogers*, which considers the degree of Indian blood and tribal or government recognition as Indian. 45 U.S. 567 (1846). The Idaho Court of Appeals has articulated that: (1) the defendant must have a significant percentage of Indian blood; and (2) the defendant must be recognized as an Indian either by the federal government or some tribe or society of Indians. *State v. Bonaparte*, 114 Idaho 577, 579, 759 P.2d 83, 85 (Ct. App. 1988) (*overruled on other grounds in State v. Larson*, 158 Idaho 130, 344 P.3d 910 (Ct. App. 2015)). In *Bonaparte*, the defendant argued that the district court did not have jurisdiction over him because he was an American Indian, despite the fact that he was not eligible to become a member of the Nez Perce Tribe; Bonaparte fell 1/64th short of the one-quarter Indian blood requirement for enrollment. *Id*. at 578–79, 759 P.2d at 84–85. The Court of Appeals determined that it did not need to decide whether Bonaparte had a significant percentage of Indian blood to satisfy the first prong of the test because Bonaparte was not an enrolled

member of a tribe, or even eligible to become an enrolled member of a tribe; thus he could not satisfy the recognition prong of the test. *Id.* at 579–80, 759 P.2d at 85–86.

Subsequently, in *Lewis v. State*, Lewis argued that enrollment in a tribe is not an absolute requirement for recognition as an Indian. 137 Idaho 882, 885, 55 P.3d 875, 878 (Ct. App. 2002). The Court of Appeals agreed, and cited to other factors that courts have considered such as: (1) governmental recognition through the receipt of assistance reserved only to Indians; (2) enjoyment of benefits of tribal affiliation; and (3) social recognition as an Indian through residence on a reservation and participation in Indian social life. *Id.* Still, the Idaho Court of Appeals recognized that tribal enrollment remained the most important indicium of recognition as an Indian. *Id.* Ultimately, the Court of Appeals determined that Lewis could not satisfy the recognition prong of the test because he only had minor contacts with the reservation, i.e., he never expressed interest in tribal enrollment until after his conviction; after leaving the reservation as a child he maintained no ties with the Shoshone-Bannock Tribes; he had little contact with Indian relatives; he participated in no tribal activities beyond a festival he attended as a child; he was never employed on the reservation; he never sought federal assistance based on his status as an Indian; and he was never affiliated with any Indian religions. *Id.*

Considering additional factors beyond tribal enrollment to satisfy the second prong is also consistent with other jurisdictions. *See United States v. Bruce*, 394 F.3d 1215, 1224 (9th Cir. 2005) (*quoting United States v. Broncheau*, 597 F.2d 1260, 1263 (9th Cir. 1979) ("Tribal enrollment is 'the common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative.'")); *United States v. Cruz*, 554 F.3d 840, 846 (9th Cir. 2009) (internal quotation omitted) (four factors govern the second prong, in declining order of importance: "1) tribal enrollment; 2) government recognition formally and informally through receipt of assistance reserved only to Indians; 3) enjoyment of the benefits of tribal affiliation; and 4) social recognition as an Indian through residence on a reservation and participation in Indian social life."); *See also United States v. Antelope*, 430 U.S. 641, 647 n. 7 (1977) ("enrollment in an official tribe has not been held to be an absolute requirement for federal jurisdiction, at least where the Indian defendant lived on the reservation and maintained tribal relations with the Indians thereon.")).

Whether a non-tribe member can be considered an Indian for jurisdictional purposes is a matter of first impression for this Court. The district court determined that despite the fact

George is not eligible to become a member of the Coeur d'Alene Tribe she still satisfied the two-prong test: (1) she possessed a significant percentage of Indian blood; and (2) she had been recognized as an Indian by either the federal government or some tribe or society of Indians.

Idaho appellate courts have not established what specific percentage of Indian blood is necessary to satisfy the first prong of the test. *See Bonaparte*, 114 Idaho at 579, 759 P.2d at 85 ("Bonaparte possessed a combined 15/64th s degree of Indian blood. We need not decide whether this is 'significant' for jurisdictional purposes, because we believe Bonaparte failed to satisfy the recognition element of the two-part test."); *See also Lewis*, 137 Idaho at 885, 55 P.3d at 878 ("The parties agree that Lewis has a significant percentage of Indian blood, and therefore satisfies the first prong of the test.")

In looking to other jurisdictions, there does not appear to be a universal standard specifying what percentage of Indian blood is sufficient to satisfy the first prong; instead, courts have generally held that the defendant must possess "some degree" of Indian blood. *See United States v. Bruce*, 394 F.3d 1215, 1223–24 (9th Cir. 2005) (1/8 Indian blood was found to be sufficient; however, the Court also recognized that "[b]ecause the general requirement is only of 'some' blood, evidence of a parent, grandparent, or great-grandparent who is clearly identified as an Indian is generally sufficient to satisfy this prong."); *See also United States v. Stymiest*, 581 F.3d 759, 766 (8th Cir. 2009) ("Without question, [Stymiest] has the requisite Indian blood-his grandfather is an enrolled member and medicine man in a Minnesota Band."); *Goforth v. State*, 644 P.2d 114, 116 (Okla. 1982) (requirement of Indian blood satisfied by testimony that defendant was slightly less than one-quarter Cherokee Indian); *St. Cloud v. United States*, 702 F. Supp. 1456, 1460 (D.S.D. 1988) (15/32 of Yankton Sioux blood considered sufficient to satisfy the first requirement of having a degree of Indian blood). Here, it is undisputed that George has 22% Indian blood. The district court found that this was a significant or substantial amount to satisfy the first prong. This finding is consistent with other courts which have only required "some degree" of Indian blood.

Regarding the second prong, the district court recognized that George would ordinarily qualify to be a member of the Coeur d'Alene Tribe because she was the adopted daughter of a tribe member, but in an effort to limit the number of members who receive royalties, the Tribe had placed a moratorium on recognition of adoptions. While George was not qualified for

enrollment due to this economic policy decision, the district court found that George had extensive ties to the Coeur d'Alene Tribe:

> [I]t is apparent to the [c]ourt that the Tribe recognizes her as an Indian. She has lived virtually her whole life on the Coeur d'Alene Reservation as an Indian. She is the adopted daughter of an enrolled member of the Coeur d'Alene Tribe and an enrolled member of the Flathead Tribe. Throughout her entire life she has received benefits include [sic] health care, substance abuse treatment, housing assistance, job assistance, education, social benefits (the Tribe's taking tribal members including Ms. George to Silverwood, for example), and food assistance. She has worked on the reservation. Throughout her life she has participated in Tribal social and cultural events. Thus while case law indicates that tribal enrollment is an important consideration, and if it exists, is determinative of the second element of the status test, it is not an absolute requirement for recognition as an Indian.

The district court did not err in considering factors beyond George's eligibility for enrollment in the Tribe. The second prong of the test requires: "the defendant must be recognized as an Indian either by the federal government or some tribe or society of Indians." In *Bonaparte*, the Court of Appeals found that this prong was not satisfied because Bonaparte was unable to meet a reasonable enrollment requirement, i.e., he did not have the requisite percentage of Indian blood to be a member of the Nez Perce Tribe. *Bonaparte*, 114 Idaho at 580, 759 P.2d at 86.

Nearly twelve years later in *Lewis*, the Court of Appeals changed course and agreed with Lewis that enrollment in a tribe was not an absolute requirement for recognition as an Indian. 137 Idaho at 885, 55 P.3d at 878. At the outset, the Court of Appeals characterized its holding in *Bonaparte* as follows: "the defendant did not satisfy the recognition prong of the test because he was not an enrolled member of any tribe and was not even eligible to become a member of the tribe with which he claimed affiliation." *Id.* Thereafter, the Court of Appeals recognized three additional factors that courts have considered for the second prong of the test: (1) governmental recognition through the receipt of assistance reserved only to Indians; (2) enjoyment of benefits of tribal affiliation; and (3) social recognition as an Indian through residence on a reservation and participation in Indian social life. *Id.* After analyzing Lewis's connection to the Tribe, the Court of Appeals ultimately held "[a]ll of these factors fully support the district court's finding that Lewis had 'no significant affiliation with the Shoshone-Bannock Tribes.'" *Id.*

The State contends that *Lewis* is not applicable to the case at hand because Lewis was likely eligible to enroll as a member of the Tribe, whereas George is not; thus *Bonaparte* is the applicable precedent. However, application of the factors identified in *Lewis* does not turn on

6

whether a defendant is eligible for tribal membership; rather, these factors are to be considered in addition to tribal enrollment. Indeed, if this Court applies the holding of *Bonaparte* to the facts of *Lewis*, the Court of Appeals would have been bound to find that the state lacked jurisdiction if Lewis was eligible to become a member of the Tribe. Instead, the Court of Appeals considered other factors to conclude that while Lewis was likely eligible to become a member of the Tribe based on his blood percentage, he did not have significant ties to the Tribe; therefore he could not satisfy the recognition prong of the test.

Here, unlike the defendants in both *Bonaparte* and *Lewis*, George has significant ties to the Coeur d'Alene Tribe: (1) George's biological mother has 14/32nds combined Coeur d'Alene, Spokane, and Colville blood, or is 44% Indian, while her biological father's ancestry is unknown; (2) George has 14/64ths combined Coeur d'Alene, Spokane and Colville blood, or is nearly 22% Indian; (3) George's adoptive father is an enrolled member of the Coeur d'Alene Tribe and her adoptive mother is an enrolled member of the Flathead Tribe; (4) George has two children and one on the way, all of whom will be enrolled with the Coeur d'Alene Tribe; (5) George was born at a hospital in Spokane, but has lived on the Coeur d'Alene reservation for the vast majority of her life; (6) George has received medical, housing, food, educational and other benefits from the Coeur d'Alene Tribe; (7) George has attended and taken part in tribal sponsored events and activities; (8) George is qualified to be an adopted enrolled Tribal member because her father is an enrolled member of the Coeur d'Alene Tribe but the Tribe put a moratorium on tribal adoptions after the Coeur d'Alene Casino was built to limit the number of people who would qualify for royalties; (9) George's mother testified that the only tribal benefit George does not receive are the royalties from the Casino profits; (10) George has worked at a grocery store on the reservation; and (11) George has received substance abuse treatment from the Tribe's health care provider/facility. Given these factors, the district court did not err in finding that George was an Indian.

The State points out that the Coeur d'Alene Tribe requires that a person have at least one quarter Indian heritage to be eligible for Tribe membership, and that the Tribe will only prosecute enrolled members. However, the district court correctly held that this was not a necessary consideration, noting: "[t]his [c]ourt either has jurisdiction or it does not, and it is not determined by whether other agencies have or do not have jurisdiction or exercise discretion in determining whether to prosecute." *See State v. Allan*, 100 Idaho 918, 923, 607 P.2d 426, 431, n.

7

1 (1980) (McFadden, J., specially concurring) ("state jurisdiction is not inherent, and may not be established simply by casting doubt on the correctness of other possible forums.").

## IV. CONCLUSION

The district court judgment is affirmed.

Justices HORTON, BRODY, BEVAN and TROUT, Pro Tem, **CONCUR.**