In the Matter of the PATERNITY OF J.A.V., and Conrad Hisgun, Appellant,

v.

Denise VELASCO, Respondent.

No. C5–95–449.

Court of Appeals of Minnesota.

Sept. 12, 1995.

Review Granted Nov. 15, 1995.

Mark D. Fiddler, Indian Child Welfare Law Center, Gail C. Bohr, Faegre & Benson, PLLP, Minneapolis, for appellant J.A.V.

Bertram E. Hirsch, Floral Park, NY, for appellant–intervenor Sisseton–Wahpeton Sioux Tribe.

Wright S. Walling, Gary A. Debele, Walling & Berg, Minneapolis, for respondent.

Considered and decided by PETERSON, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

PETERSON, Judge.

Appellant Conrad Hisgun brought an action to establish paternity of J.A.V. Respondent Denise Velasco, J.A.V.'s birth mother, moved to dismiss the action, claiming that Hisgun had lost his parental rights pursuant to Minn.Stat. § 259.261 (1992). Appellant Sisseton–Wahpeton Sioux Tribe was permitted to intervene. The district court dismissed the action. We reverse and remand.

## FACTS

Hisgun, an enrolled member of the Sisseton–Wahpeton Sioux Tribe, and Velasco had a sexual relationship from September to December 1992. Hisgun was later incarcerated. Velasco learned she was pregnant and wrote to Hisgun, while he was incarcerated, to explain that she was pregnant, that he was the father, and that she planned to have an abortion.

Velasco did not have an abortion. J.A.V. was born on August 2, 1993. On August 4, 1993, Velasco placed J.A.V. with prospective adoptive parents in South Dakota. The placement was made through a Minnesota adoption agency. Hisgun and Velasco saw each other in mid-August 1993, and Hisgun learned that Velasco had not had an abortion and that his child had been born and placed with the South Dakota couple.

On November 15, 1993, Hisgun filed an affidavit of acknowledgement of paternity with the Minnesota Department of Health's division of vital statistics. The filing occurred 105 days after J.A.V. was born and 103 days after J.A.V. was placed with the prospective adoptive parents. Velasco refused to allow the Department of Health to

list Hisgun as the father on J.A.V.'s birth certificate. Hisgun began this paternity action.

J.A.V. has remained with the prospective adoptive parents in South Dakota since August 4, 1993. However, nothing in the record indicates that an adoption proceeding has been initiated.

Velasco moved to dismiss Hisgun's paternity action, arguing that the trial court had no jurisdiction over the paternity case because Hisgun failed to file an affidavit required under Minn.Stat. § 259.261 (1992). The district court granted Velasco's motion and dismissed the action. This appeal followed.

## ISSUE

I. Does Minn.Stat. § 259.261, subd. 1 (1992) bar Hisgun's action to establish paternity?

II. Does the Indian Child Welfare Act apply to Hisgun's action to establish paternity?

III. Did the district court err in determining that South Dakota is the proper jurisdiction for adoptive or custody proceedings?

## ANALYSIS

### I.

A reviewing court need not defer to a district court's decision on a legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984). Construction of a statute is a question of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

■ Minn.Stat. § 259.261, subd. 1 (1992) provides:

Any person not entitled to notice under section 259.26, shall lose parental rights and not be entitled to notice at termi-

nation, adoption, or other proceedings affecting the child, unless within 90 days of the child's birth or within 60 days of the child's placement with prospective adoptive parents, whichever is sooner, that person gives to the division of vital statistics of the Minnesota department of health an affidavit stating intention to retain parental rights.[1]

The district court found:

Minn.Stat. 259.261 Subd. 1 provides that any (presumably male) person shall not be entitled to any parental rights to any child born out of wedlock unless that person, within 90 days of the child's birth or within 60 days of the child's placement with prospective adoptive parents, provides to the Division of Vital Statistics of the Minnesota Department of Health an affidavit of intention to claim parental rights. As the claim of [Hisgun] was not so filed until 105 days after the child's birth and 103 days after its placement, his parental rights do not and have never existed and, therefore, the claims herein fail to state a cause of action and are dismissed.

Appellants argue that the district court erred in construing Minn.Stat. § 259.261, subd. 1 to bar Hisgun's paternity action. We agree.

An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 257.55 may be brought by * * * a man alleged or alleging himself to be the father * * *.

Minn.Stat. § 257.57, subd. 3 (1992).

A paternity action may not be brought if the child has been adopted. Minn.Stat. § 257.57, subd. 6 (1992). Otherwise, an action to determine the existence of the father and child relationship as to a child who has no presumed father is not barred until one year after the child reaches the age of majority. Minn.Stat. § 257.58, subd. 1 (1992).

---

1. Minn.Stat. § 259.261 has been renumbered to Minn.Stat. § 259.51. Minn.Stat. § 259.261    (1994).

There is no dispute that J.A.V. has no presumed father under the parentage act. J.A.V. has not reached the age of majority. And nothing in the record indicates that J.A.V. has been adopted. Hisgun, therefore, meets the requirements for bringing an action to determine the existence of the father and child relationship between himself and J.A.V.

Under the Parentage Act, Minn.Stat. §§ 257.51–.74 (1992 & Supp.1993), a man alleging himself to be the father of a child who has no presumed father is not required to file an affidavit under Minn.Stat. § 259.261, subd. 1 before bringing an action to determine the existence of the father and child relationship. The district court erred by applying Minn.Stat. § 257.261, subd. 1, which is not part of the Parentage Act, to bar an action brought under the Parentage Act.

There is no reason to apply Minn.Stat. § 259.261, subd. 1 in a paternity action. Under Minn.Stat. § 259.261, subd. 1, a parent who is not otherwise entitled to receive notice of the hearing upon a petition to adopt a child becomes entitled to receive notice of the hearing in an adoption proceeding by filing an affidavit. *See* Minn.Stat. § 259.49, subd. 1(2)(f) (1994) (if parent has filed affidavit pursuant to section 259.261, renumbered section 259.51, notice of hearing upon petition to adopt child shall be given to parent).

The position of a biological parent bringing a paternity action under Minn.Stat. § 257.57, subd. 3 differs markedly from the position of a biological parent in an adoption proceeding. A biological parent who brings the paternity action does so to establish the existence of the parent and child relationship. In an adoption proceeding, the parent and child relationship between the biological parent and the child is terminated. *See* Minn.Stat. § 259.59, subd. 1 (1994) (birth parents relieved of parental rights and responsibilities after decree of adoption entered). Unlike a biological parent who brings a paternity action and is, presumably, aware of the status of the action, a biological parent whose child is the subject of an adoption proceeding may

not become aware of the proceeding. Minn. Stat. § 259.261, subd. 1 provides a way for a biological parent to receive notice of a hearing.

■ Minn.Stat. § 259.261, subd. 3 (1992) also supports our conclusion that the district court erred when it applied Minn.Stat. § 259.261, subd. 1 to bar Hisgun's paternity action. Minn.Stat. § 259.261, subd. 3 states:

> Upon receipt of the aforementioned affidavit the division of vital statistics of the Minnesota department of health shall notify the other parent of same within seven days. This notice to the parent shall constitute conclusive evidence of parenthood for the purposes of this statute, unless within 60 days of its receipt, either the notified parent or some other interested petitioner denies that claimant is the parent of the child and files a petition pursuant to chapter 260 to challenge such notice of parenthood.

Under this subdivision, when the department of health received Hisgun's affidavit, it was required to notify Velasco of the affidavit. Velasco or some other interested person then could have challenged the notice by denying that Hisgun is the father of J.A.V. and filing a petition under chapter 260 to challenge Hisgun's parenthood.

Minn.Stat. § 260.221, subd. 1 (Supp.1993) provides:

> The juvenile court may upon petition, terminate all rights of a parent to a child in the following cases:
>
> * * *
>
> (b) If it finds that one or more of the following conditions exist:
>
> * * *
>
> (7) That in the case of a child born to a mother who was not married to the child's father when the child was conceived nor when the child was born the person is not entitled to notice of an adoption hearing under section 259.26 and either the person has not filed a notice of intent to retain

parental rights under section 259.261 or that the notice has been successfully challenged * * *.[2]

Under this statute, a failure to file an affidavit under Minn.Stat. § 259.261, subd. 1 is a basis upon which parental rights may be terminated. But parental rights may not be terminated without petitioning the juvenile court. *See* Minn.Stat. § 260.231, subd. 1 (1994) (any reputable person with knowledge of circumstances indicating rights of parent to child should be terminated may petition juvenile court in manner provided under Minn.Stat. § 260.131, subds. 2–3). The juvenile court has exclusive jurisdiction in proceedings concerning the termination of parental rights to a child under Minn.Stat. §§ 260.221 to 260.245. Minn.Stat. § 260.111, subd. 2(a) (1992).

This procedure was not followed. No petition was filed pursuant to chapter 260 to challenge the notice of parenthood. Instead, the district court found in a paternity action brought under chapter 257 that Hisgun has no parental rights to J.A.V. and may not bring a cause of action to establish parental rights.

We reverse the determination that Hisgun's paternity action is barred and remand for further proceedings.

## II.

■ Appellants claim that even if the trial court's interpretation of Minn.Stat. § 259.261, subd. 1 were correct, the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901–1963 (1988), prohibits applying this interpretation to Hisgun. Respondent argues that the ICWA does not apply to Hisgun's paternity action. We conclude that there is no basis for applying the ICWA in this paternity action.

There are two prerequisites to invoking the requirements of the ICWA. First, it must be determined that the proceeding is a "child custody proceeding" as defined by the Act. Once it has been determined that

the proceeding is a child custody proceeding, it must then be determined whether the child is an Indian child.

*In re Appeal in Maricopa County Juvenile Action No. A–25525*, 136 Ariz. 528, 667 P.2d 228, 231 (Ct.App.1983) (citations omitted).

The ICWA defines "child custody proceeding" to mean and include:

(i) "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;

(ii) "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship;

(iii) "preadoptive placement" which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and

(iv) "adoptive placement" which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.

25 U.S.C. § 1903(1) (1988).

The district court recognized, as a general proposition, that the ICWA does not apply to paternity actions. However, the district court concluded that because Velasco's motion to dismiss Hisgun's action with prejudice for failing to file a timely affidavit under Minn.Stat. § 259.261, subd. 1, if granted, would have the effect of terminating Hisgun's parental rights, the action is an action resulting in the termination of the parent-child relationship and the ICWA applies.

Because we have concluded that Minn.Stat. § 259.261, subd. 1 may not be used as

---

**2.** Minn.Stat. § 259.26 has been renumbered to    Minn.Stat. § 259.49. Minn.Stat. 259.26 (1994).

grounds to bar Hisgun's paternity action and that terminating parental rights for failing to comply with Minn.Stat. § 259.261, subd. 1 must be accomplished through a termination proceeding brought under chapter 260, we conclude that the district court erred when it applied the ICWA to Hisgun's paternity action.

Hisgun's paternity action is not an action that can result in the termination of the parent-child relationship. If Hisgun's action is unsuccessful, the parent-child relationship between Hisgun and J.A.V. will not be terminated, it will simply never be established.

In her notice of review and statement of the case, Velasco raised the issue of whether the district court erred in allowing the Sisseton–Wahpeton Sioux Tribe to intervene. But because she did not address the issue in her brief, we do not consider it on appeal. *See Wilson v. Moline,* 234 Minn. 174, 179, 47 N.W.2d 865, 868 (1951) (assignment of error not argued in brief deemed abandoned).

## III.

■ The district court determined that under the Uniform Child Custody Jurisdiction Act (UCCJA), Minn.Stat. §§ 518A.01–.25 (1994), South Dakota would be the proper jurisdiction for adoptive or custody proceedings.

> Determining jurisdiction under the UCCJA is a three-step process: (1) the court determines whether it has jurisdiction under section 3 of the Act; (2) the court determines whether a custody proceeding is pending in another state which also has section 3 jurisdiction; and (3) if dual jurisdiction exists, an inconvenient forum analysis is applied.

*Coleman v. Coleman,* 493 N.W.2d 133, 136 (Minn.App.1992) (citation omitted).

Because the record does not indicate that any proceeding is pending in South Dakota, the district court erred by determining that South Dakota is the proper jurisdiction for possible future adoptive or custody proceedings.

**Reversed and remanded.**