## In the Matter of the WELFARE OF S.N.R.

### No. C2–00–179.

Court of Appeals of Minnesota.

Sept. 1, 2000.

Review Denied Nov. 15, 2000.

Mark D. Fiddler, Vincent & Fiddler, P.L.C., Minneapolis, for appellant Carole Freeman.

Amy Klobuchar, Hennepin County Attorney, Nancy Jones, Assistant County Attorney, Minneapolis, for respondent Hennepin County Department of Children and Family Services.

Joseph Plumer, Michael Garbow, Cass Lake, for respondent Leech Lake Band of Ojibwe.

Candace Barr, Niemi & Barr, P.A., Minneapolis, for respondents Joseph & Theresa Myers.

Sonia Miller–Van Oort, Faegre & Benson, L.L.P., Minneapolis, for Guardian Ad Litem.

Considered and decided by WILLIS, Presiding Judge, RANDALL, Judge, and PARKER, Judge.*

## OPINION

WILLIS, Judge

Appellant Carole Freeman argues that the juvenile court erred in concluding that the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (1994), is applicable to adoption proceedings involving S.N.R. and in granting summary judgment to respondent Hennepin County Department of Children and Family Services and dismissing Freeman's petition to adopt S.N.R. We affirm.

## FACTS

S.N.R. was born in April 1993. Soon after her birth, respondent Hennepin County Department of Children and Family Services ("HCDCFS") placed S.N.R. in the licensed foster care of C.G., whose partner was appellant Carole Freeman. S.N.R.'s mother, who was an enrolled member of the Leech Lake band of the Minnesota Chippewa Tribe, died in 1997. In August 1997, S.N.R.'s father's parental rights were terminated, and the Commissioner of Human Services became her guardian and legal custodian. In early 1998, HCDCFS contracted with the Professional Association of Treatment Homes ("PATH") to conduct an adoption study to evaluate C.G. and Freeman's potential to serve as adoptive parents. The recommendation of the study was favorable. But in the spring of 1998, C.G. and Freeman's relationship deteriorated, the two separated, and S.N.R. remained with C.G. Freeman then obtained a license to serve as a foster-care provider, and in August 1998 HCDCFS placed S.N.R. in foster care with Freeman.

HCDCFS again contracted with PATH to conduct an adoption study, this time with Freeman as the sole potential adoptive parent. Before the issuance of the written report, which HCDCFS understood would be unfavorable to Freeman, HCDCFS decided that it would not approve adoption by Freeman. In January 1999, the juvenile court held hearings regarding HCDCFS's motion to remove S.N.R. from Freeman's care, place her temporarily in the care of her siblings' then-foster parents, and then place her with respondents Joseph and Theresa Myers, the siblings' prospective adoptive parents. The court ordered that S.N.R. remain in Freeman's care and that S.N.R. have monthly visits with her siblings.

In March 1999, Freeman petitioned to adopt S.N.R. In June 1999, Lillian Reese, the Director of Family Services of respondent Leech Lake Band of Ojibwe, notified Hennepin County that the band recognized S.N.R. and her siblings "as members of the Leech Lake Reservation." As a result of this notification, HCDCFS moved the juvenile court to find that the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (1994) ("ICWA"), was applicable to the proceedings. In July 1999, the band moved, under the ICWA, to intervene in the juvenile court proceedings. The Myerses moved to intervene in the proceedings and to be allowed to petition to adopt S.N.R.

The juvenile court heard the motions on August 6, 1999. The court granted the band's motion to intervene on a permissive basis, scheduled an evidentiary hearing on the issue of whether S.N.R. is in fact an "Indian child" within the meaning of the ICWA, and postponed consideration of the other motions.[1] Following a September 3,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. At the August 6 hearing, Freeman introduced a number of documents from the Leech Lake Band and the Minnesota Chippewa Tribe. In a September 1990 letter addressed

1999, hearing, the court issued an order determining that all further adoption proceedings were subject to the ICWA, granting the band's motion to intervene as a matter of right, and granting the Myerses' motion to intervene and to be allowed to petition to adopt S.N.R.

In December 1999, HCDCFS moved for summary judgment, seeking dismissal of Freeman's petition to adopt S.N.R. On January 7, 2000, the juvenile court granted summary judgment for HCDCFS and dismissed Freeman's petition. Freeman appeals from the September 1999 and January 2000 orders.

## ISSUES

1. Did the juvenile court err in concluding that a tribal determination that a child is eligible for membership in that tribe is conclusive evidence that the child is an "Indian child" under the ICWA?

2. Did the juvenile court err in granting summary judgment to HCDCFS and dismissing Freeman's petition to adopt S.N.R. because Freeman could not demonstrate good cause to deviate from the placement preferences established by the ICWA?

## ANALYSIS

On appeal from summary judgment, this court must determine if there are any genuine issues of material fact and if the juvenile court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We review the facts in the light most favorable to the party against whom summary judgment

was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

Freeman argues that the juvenile court erred in concluding that the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (1994) ("ICWA"), is applicable to adoption proceedings involving S.N.R. Freeman also argues that the court erred in granting summary judgment to HCDCFS and in dismissing Freeman's petition to adopt S.N.R. after concluding that Freeman could not meet the adoption requirements set forth by the ICWA. We review these conclusions in order.

## I. Applicability of the ICWA.

■ Freeman argues that the juvenile court erred in concluding the ICWA is applicable to adoption proceedings involving S.N.R. To determine whether the ICWA is applicable,

[f]irst, it must be determined that the proceeding is a "child custody proceeding" as defined by the Act. Once it has been determined that the proceeding is a child custody proceeding, it must then be determined whether the child is an Indian child.

*In re Paternity of J.A.V.,* 536 N.W.2d 896, 900 (Minn.App.1995) (quoting *In re Appeal of Maricopa Juvenile Action No. A-25525,* 136 Ariz. 528, 667 P.2d 228, 231 (1983)), *aff'd* 547 N.W.2d 374 (Minn.1996). The ICWA defines "child custody proceeding" to include adoptive placements. 25 U.S.C. § 1903(1)(iv) (1994). Thus, it is clear that the proceedings here are child-custody proceedings under the ICWA.

---

to Hennepin County from the Minnesota Chippewa Tribe, a representative of the tribe's Human Services Division stated that S.N.R.'s siblings "are not eligible for enrollment in our Tribe with the information provided to us by your Agency." In a May 1993 document, a child-welfare worker of the Leech Lake Band stated that S.N.R. "is eligible for enrollment in this tribe." A December 1994 document from the Minnesota Chippewa Tribe noted that S.N.R. and her siblings did not possess the "1/4 [Minnesota Chippewa Tribe blood quantum] eligibility for enrollment." In January 1995, a social worker from Leech Lake Family Services stated that the children "are not eligible for enrollment in the Minnesota Chippewa Tribe." But in the June 1999 letter from Reese described above, she stated that since the 1995 letter the band "has adopted a policy of recognizing individuals as members based on their descent from tribal members," that S.N.R.'s mother was a member of the Leech Lake Band, and that, therefore, the band recognized the children as members.

■ Section 1903 of the ICWA defines "Indian child" as

> any unmarried person who is under age eighteen and is either (a) a member of an Indian Tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.

§ 1903(4).[2] It is undisputed that S.N.R. is not currently a member of an "Indian tribe" and that her mother, T.R., was an enrolled member of the Leech Lake Band. Freeman challenges the juvenile court's conclusion that because the Leech Lake Band has determined that S.N.R. is eligible for band membership, and such determinations are conclusive evidence of eligibility under the ICWA, S.N.R. is an Indian child. We review this question of law de novo.

The Bureau of Indian Affairs has published guidelines to assist state courts in their implementation of the ICWA. *See* Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,585 (1979) [hereinafter BIA Guidelines]. The BIA Guidelines provide that under the ICWA, "[t]he determination by a tribe that a child * * * is or is not eligible for membership in that tribe * * * is conclusive." 44 Fed.Reg. at 67,586 (§ B.1(b)(i)). While the BIA Guidelines are not binding on courts, unless Congress specifically invests the bureau with the authority to implement rules pursuant to the Act, Minnesota appellate courts have consistently utilized the Guidelines to answer as a matter of law questions unanswered by the language of the ICWA itself. *See, e.g., In re Custody of S.E.G.*, 521 N.W.2d 357, 363 (Minn. 1994); *id.* at 364–65; *In re Adoption of M.T.S.*, 489 N.W.2d 285, 287–88 (Minn. App.1992); *In re Welfare of M.S.S.*, 465 N.W.2d 412, 418–19 (Minn.App.1991). And a number of other jurisdictions have con-

cluded that a tribal determination that a child is a member of a tribe or eligible for membership in a tribe is conclusive evidence that the child is an "Indian child" under the ICWA. *See, e.g., In re Junious M.*, 144 Cal.App.3d 786, 193 Cal.Rptr. 40, 43 (1983); *In re Shawboose*, 175 Mich.App. 637, 438 N.W.2d 272, 273 (1989); *In re Adoption of Riffle*, 277 Mont. 388, 922 P.2d 510, 513 (1996); *State ex rel. Juvenile Dep't v. Tucker*, 76 Or.App. 673, 710 P.2d 793, 797 (1985); *People in Interest of J.J. and S.J.*, 454 N.W.2d 317, 327–28 (S.D. 1990); *In re M.C.P.*, 153 Vt. 275, 571 A.2d 627, 634 (1989); *In re Dependency of Colnar*, 52 Wash.App. 37, 757 P.2d 534, 535–36 (1988); *see also In re Baby Boy Doe*, 123 Idaho 464, 849 P.2d 925, 931 (1993) (stating that court must make "its own determination" regarding eligibility where neither tribe nor BIA has made conclusive determination regarding eligibility).

Freeman concedes that the Leech Lake Band has the authority to determine its own membership. She argues, however, that when applying the ICWA, a juvenile court "must be satisfied that the Tribe has made an appropriate 'determination'" to give that determination conclusive effect and that, therefore, the juvenile court "must inquire" whether the tribe correctly applied its internal standards to determine that a child is eligible for membership.

To support this contention, Freeman first cites *United States v. Broncheau*, 597 F.2d 1260 (9th Cir.1979), which concludes that enrollment in a tribe is not "necessarily determinative" of "Indian" status under 18 U.S.C. § 1153. 597 F.2d at 1263. But *Broncheau* seeks to answer a question entirely different from the one before us. In *Broncheau* and the cases it cites, the appellants alleged that the federal courts had no jurisdiction over their alleged crimes

---

**2.** The ICWA defines "Indian tribe" to include any tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to such entities by the Secretary of the Interior. § 1903(8), (11). Because the Leech Lake

Band has been recognized as eligible for such services, the band is an Indian tribe for the purposes of the ICWA. *See* Indian Entities Recognized as Eligible to Receive Services from the United States Bureau of Indian Affairs, 60 Fed.Reg. 55,270, 55,272 (1997).

because the federal government did not demonstrate that they were Indians who committed an offense against other Indians under 18 U.S.C. § 1153 or its predecessor statute, on the ground that either they were not enrolled in a tribe or they had requested that their names be removed from a tribe's roll. 597 F.2d at 1262–63; *see United States v. Ives*, 504 F.2d 935, 953 (9th Cir.1974) (arguing section 1153 not applicable because appellant had requested that his name be withdrawn from roll); *Ex Parte Pero*, 99 F.2d 28, 31 (7th Cir.1938) (arguing 18 U.S.C. § 548 not applicable because individual was not enrolled member of tribe). These cases do not involve the ICWA or a tribal determination of its membership. Rather, those courts determined that *lack* of enrollment is not determinative of whether section 1153 applies. *See Broncheau*, 597 F.2d at 1262–63 (finding that federal government's failure to demonstrate that appellant was enrolled member is not determinative regarding applicability of section 1153); *Ives*, 504 F.2d at 953 (finding that because lack of enrollment is not determinative, appellant's argument that section 1153 did not apply because he requested that his name be withdrawn from tribe's roll was irrelevant); *Ex Parte Pero*, 99 F.2d 28 at 31 (holding that "lack of enrollment * * * is not determinative of [Indian] status").

Freeman next cites a section of *Broncheau* in which the court discusses a claim that section 1153 is unconstitutional because the term "Indian" is not statutorily defined and is therefore unconstitutionally vague. 597 F.2d at 1263. The court dismissed this claim because the term "Indian" in section 1153 has been judicially defined, citing cases in which courts have reviewed a number of factors to determine whether a party is an Indian under section 1153. *Id.* But in contrast with section 1153, Congress indicated that through the ICWA it sought to protect the interests of Indian tribes with respect to their children. *See* 25 U.S.C. § 1901(3) (stating "that there is no resource that is more vital to the continued existence and integ-

rity of Indian tribes than their children"); 25 U.S.C § 1902 (stating that the ICWA implements a policy of promoting "the stability and security of Indian tribes"); *see also* 25 U.S.C. § 1911(c) (providing that tribe has right to intervene in any foster-care-placement or parental-right-termination proceeding involving child who is member or eligible for membership in that tribe); *cf. Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 44–45, 109 S.Ct. 1597, 1606, 104 L.Ed.2d 29 (1989) (stating that in passing the ICWA Congress was concerned with "the rights of Indian communities vis-à-vis state authorities"). And a tribe's right to determine its membership for tribal purposes "has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 1684 n. 32, 56 L.Ed.2d 106 (1978); *see Montana v. United States*, 450 U.S. 544, 564, 101 S.Ct. 1245, 1257, 67 L.Ed.2d 493 (1981) (noting that although they have "lost many of the attributes of sovereignty," "the Indian tribes retain their inherent power to determine tribal membership").

Freeman next cites three cases from other states in support of her argument that the district court must review the internal processes through which the tribe reached its determination that S.N.R. is a tribal member. But analysis of those cases shows that, in addition to the fact that none is binding authority here, none compels the conclusion appellant would have us arrive at. In the first of these cases, the court made its own determination of a child's eligibility for tribal membership but only because the tribe was unable to do so. *See Baby Boy Doe*, 849 P.2d at 930–31. In the second case, the tribe determined that a child was not eligible for membership because his ancestry was uncertain. *In re Adoption of a Child of Indian Heritage*, 111 N.J. 155, 543 A.2d 925, 933 (1988). Describing the tribe's eligibility determination as a "current refusal to enroll" the child, and thus "not

determinative of his status as an Indian child under the ICWA," the court concluded that the basis of the tribe's eligibility determination, the child's ancestry, was a question of fact that could only be resolved at an evidentiary hearing. *Id.* But this conclusion does not support appellant's contention for three reasons: (1) all of the court's statements addressing whether the child was an Indian child under the ICWA are dicta: the court resolved the appeal on other grounds; (2) the court's treatment of the tribe's decision-making process as a "current refusal to enroll" the child rather than as a determination of eligibility suggests a situation more akin to *Baby Boy Doe,* where the tribe was unable to reach an eligibility determination, than to the current case, where the tribe has clearly made such a determination; and (3) the court states that "the tribe's refusal to enroll [the child] is not determinative of his status as an Indian child" without citing any supporting legal authority. As noted above, although lack of enrollment has been held not to be determinative of Indian status under other laws, these cases do not involve the ICWA or a tribe's determination of its membership. And in the third case, *Angus v. Joseph,* 60 Or.App. 546, 655 P.2d 208 (1982), the court did not address whether a tribe's determination that a child is a member or eligible for membership is conclusive evidence that a child is an Indian child under the ICWA. 655 P.2d at 211–12.[3]

Freeman also cites a report of the United States Senate Committee on Indian Affairs discussing a proposed amendment to the ICWA, in which the committee argued that the ICWA should be amended to provide that when a tribe seeks to intervene in a child-placement proceeding, the tribe shall include in its motion "a statement documenting the membership or eligibility for membership of the Indian child." S.Rep. No. 105–156, at 23 (1997). But the Committee's stated intent in adding this requirement was to "provide assurances to other parties involved with Indian children that Indian tribes will follow a specified set of rules based upon their own membership requirements," not to authorize a court to inquire into the validity of a tribe's determination. *Id.* And even if we were to interpret this proposed amendment to authorize such inquiries, the fact that the Committee would find it necessary to amend the ICWA to provide the courts with such authority indicates that the ICWA currently does not provide such authority. *Cf. Northern States Power Co. v. Commissioner of Revenue,* 571 N.W.2d 573, 575–76 (Minn.1997) (stating that where legislature amends statute, courts generally presume that legislature intends a change in the law). Additionally, we note that the Committee found the proposition that "tribal determinations of membership under tribal law are conclusive for the purpose of determining whether a child is an Indian child subject to the ICWA" to be "[c]onsistent with long-standing and fundamental principles of Federal Indian law." S.Rep. No. 105–156, at 23.

■ The ICWA is to be "liberally construed in favor of a result that is consistent" with "deferring to tribal judgment" and furthering Congressional purposes in passing the statute. BIA Guidelines, 44 Fed.Reg. at 67,584–85. And the purpose of the ICWA is, in part, to curtail state encroachment on the authority of the Indian tribes with respect to their children. *See Holyfield,* 490 U.S. at 45 n. 17, 109 S.Ct. at 1606 n. 17. Freeman cites no case

---

**3.** In *Angus,* the court stated that "the testimony of a representative of tribal government would be probative evidence of membership." 655 P.2d at 212. But the court was reviewing a district court's findings that a child's parents were members of different tribes and that the child was eligible for membership in both tribes. 655 P.2d at 211–212. The record

supporting the district court's findings was not solely limited to a determination of membership by the tribes. *Id.* at 212–13. And neither the district court nor the appellate court reviewed the internal processes of the tribe, as Freeman would have us require the district court to do here. *Id.*

from any jurisdiction where, as she requests we require the district court to do here, a court has reviewed the internal processes through which a tribe has reached its determination that a child is a member or eligible for membership in that tribe. And "there is perhaps no greater intrusion upon tribal sovereignty than for a [non-tribal] court to interfere with a sovereign tribe's membership determinations." *Smith v. Babbitt*, 875 F.Supp. 1353, 1361 (D.Minn.1995). We conclude, therefore, that a tribal determination that a child is a member or eligible for membership in that tribe is conclusive evidence that a child is an "Indian child" under section 1915.

■ Thus, we conclude that a court seeking to determine whether a child is an "Indian child" under the ICWA is initially faced with a question of fact. The court must determine whether a tribe has concluded that a child is a member of, or eligible for membership in, an Indian tribe.[4] This inquiry is not to be an investigation of the tribe's application of its membership standards to a particular child. *See, e.g., Smith*, 875 F.Supp. at 1361; BIA Guidelines, 44 Fed.Reg. at 67,586 (§ B.1(b)(i)). Rather, the court must determine whether the party who states that the child is a member or eligible for membership in a tribe is authorized to make such statements on the tribe's behalf. *See Angus*, 655 P.2d at 212.

■ Here, the band submitted a resolution of the Leech Lake Reservation Tribal Council that provides that

> the Reservation Tribal Council has delegated its membership determinations for purposes of implementing [the ICWA] to Lillian Reese * * * for at least the past ten years.

Resolution No. 00–26 ("Re: Tribal Membership"), Leech Lake Reservation Tribal Council (Aug. 19, 1999). And Reese testified that

> [a]fter reviewing all of the information available to me, I have made the determination that [S.N.R.] is eligible for membership in the Leech Lake Band of Ojibwe.

We conclude that there is no genuine issue of material fact regarding whether the Leech Lake Band has concluded that S.N.R. is eligible for membership in the band. Thus, the juvenile court did not err in concluding that S.N.R. is an Indian child within the meaning of the ICWA and that, therefore, the ICWA is applicable to her adoption proceedings.

## II. Dismissal of Freeman's Petition to Adopt S.N.R.

■■ Freeman next argues that, even if the ICWA applies to adoption proceedings involving S.N.R., the juvenile court erred in dismissing her petition. Section 1915 of the ICWA provides:

> In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other member's of the Indian child's tribe; or (3) other Indian families.

25 U.S.C. § 1915(a).

> [A] determination that good cause exists to avoid the placement preferences of section 1915 should be based upon a finding of one or more of the factors

established by the BIA Guidelines. *S.E.G.*, 521 N.W.2d at 363. The BIA Guidelines provide that good cause not to follow the ICWA placement preferences must be based on one or more of the following factors:

> (i) The request of the biological parents or the child when the child is of sufficient age.

4. Where the district court is not presented with a tribal determination that a child is a member of, or eligible for membership in, the tribe, the court must engage in further fact-finding, the outlines of which we need not discuss here. *See Indian Heritage*, 543 A.2d at 933.

(ii) The extraordinary physical or emotional needs of the child as established by testimony of a qualified expert witness.

(iii) The unavailability of suitable families for placement after a diligent search has been completed for families meeting the preference criteria [of section 1915(a)].

BIA Guidelines, 44 Fed.Reg. at 67,594 (§ F.3(a)). And a party who does meet the placement preferences of the ICWA who seeks to adopt an Indian child bears the burden of establishing good cause to depart from those preferences. *Id.* at 67,594 (§ F.3(b)).

 Freeman does not qualify as a member of S.N.R.'s extended family, as a member of the Leech Lake Band, or as a member of another Indian tribe, and Freeman did not argue to the juvenile court, and does not argue here, that she qualifies as a preferred placement. Freeman did not provide the testimony of a qualified expert witness that is required to demonstrate good cause on the basis of extraordinary physical or emotional needs of S.N.R. that would allow the juvenile court to place S.N.R. with Freeman. *See S.E.G.,* 521 N.W.2d at 364–65. And she did not attempt to demonstrate that, after a diligent search, there were no suitable families available for placement meeting the preference criteria of section 1915. We conclude, therefore, that the juvenile court did not err in granting summary judgment to HCDCFS and dismissing Freeman's petition to adopt S.N.R.[5]

**DECISION**

The district court did not err in concluding that the determination of the Leech Lake Band that S.N.R. is eligible for membership in the band is conclusive evidence that S.N.R. is an Indian child within the meaning of the ICWA and that, therefore, the ICWA applied to adoption proceedings involving her. And because Freeman failed to provide the testimony of a qualified expert witness that is necessary to demonstrate good cause to deviate from the placement preferences of the ICWA, the court did not err in granting HCDCFS summary judgment and in dismissing Freeman's petition to adopt S.N.R.

**Affirmed.**

RANDALL, Judge (concurring specially)

I concur in the result.

---

**5.** Freeman argues that the juvenile court erred in "dismissing appellant's adoption petition based upon the Myerses' preferred-placement status under the ICWA." We do not construe the juvenile court's decision to be based on that ground. Rather, the juvenile court concluded correctly that Freeman, as a party who does not qualify as an ICWA preferred placement and who petitions to adopt an Indian child, has the burden of establishing good cause to depart from those preferences and, because Freeman failed to provide the required expert-witness testimony, she could not satisfy her burden of establishing that S.N.R. has extraordinary physical or emotional needs meriting departure from those placement preferences. *See S.E.G.,* 521 N.W.2d at 362, 364–65. Regardless of whether the court based its decision on the ground Freeman asserts, we will affirm the grant of summary judgment if it can be sustained on any ground. *See Myers Through Myers v. Price,* 463 N.W.2d 773, 775 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991). We need not, therefore, address whether the Myerses qualify as a preferred placement under the ICWA.