In the Matter of the WELFARE OF
the CHILDREN OF R.M.B. and
R.E.R., Parents.

No. A07–18.

Court of Appeals of Minnesota.

July 17, 2007.

Mark D. Fiddler, Fiddler Law Office, Minneapolis, MN, for appellant Judith Albrecht.

Robert M.A. Johnson, Anoka County Attorney, Charles D. LeBaron, Assistant County Attorney, Anoka, MN, for respondent Anoka County Social Services.

Bertha J. Swanson, Swanson, Drobnick & Tousey, Woodbury, MN, for respondent White Earth Band of Chippewa.

Kenneth J. Dee, Assistant Public Defender, Anoka, MN, for respondent J.H.

E. Susanne Mahony–St. Clair, Assistant Public Defender, Anoka, MN, for respondent R.E.R.

Marc A. Al, Stoel Rives, and Catherine A. Laroque, Indian Child Welfare Law Center, Minneapolis, MN, for respondent R.M.B.

Jody M. Alholinna, El–Ghazzawy Law Offices, Minneapolis, MN, for respondents foster parents.

Considered and decided by KALITOWSKI, Presiding Judge; WRIGHT, Judge; and ROSS, Judge.

## OPINION

WRIGHT, Judge.

In this appeal from the district court's order granting respondent tribe's petition to transfer jurisdiction of this child-protection proceeding to the tribal court, appellant guardian ad litem argues that the district court erroneously concluded that the proceeding was not at an advanced stage and, thus, good cause to deny the petition to transfer jurisdiction was lacking. We affirm.

## FACTS

R.M.B. and R.E.R. are the parents of T.B. and K.B. It is undisputed that the children are eligible for membership in the White Earth Band of Ojibwe (the tribe [1]), that neither child resides nor is domiciled on the tribe's reservation, and that both children are "Indian children" under 25 U.S.C. § 1903(4) (2000).

On October 12, 2004, the children were placed in foster care. Anoka County subsequently filed a child-in-need-of-protection-or-services (CHIPS) petition regarding both children; and the district court adjudicated them to be in need of protection or services in its November 19, 2004 order.[2]

In an affidavit filed March 17, 2005, Toni Stillday, a social worker authorized to speak on behalf of the tribe in child-custody proceedings, confirmed that the tribe

---

1. The Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (2000) (ICWA), defines an "Indian tribe" as "any Indian tribe, band, nation, ... or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior.]" 25 U.S.C. § 1903(8) (2000). The White Earth Band of Ojibwe, which is a band of the Minnesota Chippewa Tribe, fits this definition. Preamble to the Revised Constitution and Bylaws of the Minnesota Chippewa Tribe, Minnesota. Because this opinion addresses the petition made under ICWA by the White Earth Band

of Ojibwe to transfer jurisdiction of this child-protection proceeding to tribal court, and because the White Earth Band of Ojibwe is an "Indian tribe" for ICWA purposes, we refer to the White Earth Band of Ojibwe as "the tribe."

2. In nine orders filed between February 2005 and September 2006, the district court held that it was in the children's best interests to continue their CHIPS status and their out-of-home placements.

had received notice of the child-protection proceeding, as required by the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (2000) (ICWA). Stillday also averred that the tribe believed that "continued custody of the children by their parents [is] contrary to the best interests of the children and that returning the children to the care of the parents . . ., at this time, is likely to result in serious emotional or physical damage to the child[ren]."

On September 26, 2006, the tribe petitioned to transfer jurisdiction of the child-protection proceeding to the tribal court.[3] Mother filed a memorandum in support of this petition. The children's guardian ad litem opposed the petition, arguing that there is good cause to deny the petition to transfer jurisdiction to the tribal court because the proceeding is at an "advanced stage." *See* 25 U.S.C. § 1911(b) (requiring grant of petition to transfer jurisdiction of juvenile-protection proceeding to tribal court "in the absence of good cause to the contrary"); Bureau of Indian Affairs' Guidelines for State Courts, 44 Fed. Reg. 67,584–67,591 (Nov. 26, 1979) (stating that "good cause" not to transfer child-protection proceeding to tribal court may exist if the proceeding is at an "advanced stage"). While the petition was pending, the guardian ad litem requested a permanent-status hearing, and the county petitioned under Minn.Stat. § 260C.201, subd. 11 (2006), to permanently transfer legal and physical custody of the children to their foster parents. But at the November 30, 2006 hearing on the tribe's petition to transfer jurisdiction, the county withdrew its permanent-placement petition and advised the district court that it supported the tribe's transfer petition.

From the bench, the district court granted the tribe's petition to transfer jurisdiction to the tribal court, finding both that the proceeding is not at an advanced stage and that "[t]his isn't a situation where [the tribe] wait[ed to] see how the Court is going and then [petitioned] to transfer . . . because [it was] afraid of the decision that's going to happen." In a written order filed later that day, the district court reiterated its decision to grant the tribe's petition to transfer jurisdiction, stating: "Good cause does not exist to deny transfer of these proceedings to [the] Tribal Court." In a subsequent order filed on December 12, 2006, the district court made additional findings of fact and conclusions of law, including a finding that the proceeding is not at an "advanced stage" because it "continues to be a CHIPS case" in that neither a petition to terminate parental rights nor a petition for permanent placement is pending. This appeal followed.[4]

## ISSUE

Did the district court erroneously conclude that there is not good cause to deny respondent tribe's petition to transfer jurisdiction of this child-protection proceeding?

## ANALYSIS

■ "[I]n the absence of good cause to the contrary," the Indian Child Welfare

---

3. The tribe maintains that it filed its petition to transfer jurisdiction to the tribal court in anticipation of the county filing a permanent-placement petition.

4. Prior to the instant appeal, the guardian ad litem petitioned for a writ of mandamus compelling the district court to vacate its order transferring jurisdiction to the tribal court and to set the matter for a permanent-placement hearing. Because an appeal would provide an adequate remedy, we denied the petition. *In re Welfare of Children of R.M.B. & R.E.R.*, No. A06–2363 (Minn.App. Jan. 9, 2007). On February 20, 2007, the Minnesota Supreme Court denied review of our decision.

Act, 25 U.S.C. §§ 1901–1963 (2000) (ICWA), requires a district court to grant a proper request to transfer to the tribal court jurisdiction of a child-protection proceeding involving the custody of an Indian child who does not reside and is not domiciled on the reservation. 25 U.S.C. § 1911(b).

Because ICWA does not define what constitutes "good cause" to deny a petition to transfer jurisdiction of a child-protection proceeding, Minnesota courts have looked to the guidelines published by the Bureau of Indian Affairs (BIA Guidelines) for guidance in interpreting ICWA, including determining the existence of "good cause." See In re Welfare of Child of T.T.B. & G.W., 724 N.W.2d 300, 305 (Minn. 2006) (examining BIA Guidelines; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584–67,595 (Nov. 26, 1979), to interpret meaning of "good cause"); In re Welfare of S.N.R., 617 N.W.2d 77, 81 (Minn.App. 2000) (citing several Minnesota appellate cases that use BIA guidelines to interpret or apply ICWA), review denied (Minn. Nov. 15, 2000). Regarding "good cause," the BIA Guidelines state: "Good cause not to transfer the proceeding may exist if … [t]he proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing." BIA Guidelines, 44 Fed.Reg. at 67,591. The BIA Guidelines also make clear that the party opposing the petition to transfer has the burden of showing good cause to deny transfer. Id. Here, the district court found that "good cause" to deny the petition to transfer jurisdiction to the tribal court did not exist because this proceeding was not at an advanced stage.

■ Whether "good cause" exists to deny a petition to transfer jurisdiction to a tribal court is a mixed question of law and fact. T.T.B., 724 N.W.2d at 307. We re-view mixed questions of law and fact to determine whether the district court made factual findings that are unsupported by the record, erroneously applied the law, or abused its discretion when it reached its ultimate conclusion. Rehn v. Fischley, 557 N.W.2d 328, 333 (Minn.1997); cf. In re Custody of S.E.G., 521 N.W.2d 357, 363 (Minn.1994) (reviewing district court's decision that "good cause" existed to deviate from ICWA's adoptive-placement preferences by determining whether district court's factual findings were clearly erroneous and whether district court improperly weighed relevant factors or misapplied law). But the application of ICWA to undisputed facts presents a question of law, which we review de novo. T.T.B., 724 N.W.2d at 307.

In T.T.B., the Minnesota Supreme Court considered whether the proceeding was at an "advanced stage" when petitions to transfer jurisdiction to the tribal court were filed and whether the petitioning parties acted promptly after receiving notice of the proceeding. Id. at 306. There, the proceeding began in December 2003 when the county petitioned to terminate parental rights or to transfer permanent legal and physical custody of the children. Id. at 307. The county gave the tribe notice of the petition less than three weeks later. Id. In September 2004, more than two months after the originally scheduled trial date, the tribe petitioned to transfer jurisdiction. Id. The supreme court affirmed the district court's denial of the petition to transfer jurisdiction, holding that there was good cause to deny the petition for two reasons. Id. at 308. First, the proceeding was at an advanced stage because the six-month progress hearings required under the Minnesota Rules of Juvenile Protection Procedure already had been held; witness lists, exhibit lists, and pretrial motions were due; the trial already

had been postponed; and a home study along with a family group conference had been completed. *Id.* Second, because that tribe did not petition to transfer jurisdiction until eight months after receiving notification of the petition initiating the case, that tribe had not acted promptly. *Id.* at 308–09.

The procedural posture in *T.T.B.* is factually distinguishable from the instant case. Here, neither a TPR nor a permanent-placement petition was pending when the tribe filed its petition to transfer jurisdiction to the tribal court or when the district court heard this petition.[5] The district court concluded that the proceeding was not at an advanced stage because it was a CHIPS proceeding, not a permanency proceeding. But the absence of a pending TPR or permanent-placement petition does not establish as a matter of law that a proceeding is not at an advanced stage. ICWA's definition of "child custody proceeding" includes both TPR proceedings, which are defined as "any action resulting in the termination of the parent-child relationship," 25 U.S.C. § 1903(1)(ii), and foster-care-placement proceedings, which are defined as "any action removing an Indian child from its parent ... for temporary placement in a foster home ...

where parental rights have not been terminated," 25 U.S.C. § 1903(1)(i). ICWA requires a district court to grant a petition to transfer either type of proceeding in the absence of good cause to deny the petition. 25 U.S.C. § 1911(b) ("In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child ..., the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe....").

The children were placed in foster care, but a petition to terminate R.M.B.'s and R.M.R.'s parental rights was not pending. Therefore, the CHIPS proceeding over which the district court was presiding when the tribe filed its transfer petition falls within ICWA's definition of foster-care-placement proceeding. 25 U.S.C. § 1903(1)(i). When the district court concluded that the CHIPS proceeding was not at an advanced stage because neither a TPR nor a permanent-placement petition was pending, it improperly conflated two proceedings that are distinct under ICWA.[6] Rather, the proper inquiry for the district court was whether the CHIPS proceeding was at an advanced stage, without reference to the initiation of a TPR or permanency proceeding.[7]

---

**5.** Indeed, the county filed its permanent-placement petition after the tribe filed its transfer petition and withdrew it before the district court heard the petition.

**6.** In support of her argument that Minnesota law regards CHIPS and permanency proceedings as one continuous proceeding, the guardian ad litem cites Minn. R. Juv. Prot. P. 7.07, subd. 4, which states that a permanency proceeding for a child who was the subject of a CHIPS proceeding is a continuation of the CHIPS proceeding, and the parties may not, as a matter of right, disqualify the judge in the permanency proceeding if that judge was the judge in the CHIPS proceeding. Although Minnesota courts regard these proceedings as a continuous proceeding for purposes of dis-

qualifying a district court judge, they are considered separate proceedings for other purposes. *See, e.g., In re Welfare of Children of S.W.,* 727 N.W.2d 144, 153 (Minn.App.2007) (holding that ICWA violations during foster-care proceeding do not require district court to invalidate subsequent TPR proceeding), *review denied* (Minn. Mar. 28, 2007). Moreover, whether Minnesota law considers these proceedings to be continuous or distinct is not pertinent to our analysis of whether there is good cause to transfer a CHIPS proceeding to tribal court because that determination is governed by ICWA.

**7.** The CHIPS proceeding and foster-care placement commenced in October 2004; and the petition to transfer jurisdiction was filed

Other jurisdictions that have considered cases with a similar procedural posture have reached similar conclusions. In *In re A.B.*, the county commenced a foster-care proceeding in March 2001 and subsequently filed a TPR petition on June 3, 2002. 663 N.W.2d 625, 631 (N.D.2003). The family-court referee determined that there was good cause to deny the tribe's July 2002 petition to transfer jurisdiction to the tribal court because it was filed at an advanced stage of the proceeding. *Id.* The district court disagreed, holding that the "relevant time for deciding whether the July 2002 [petition] to transfer was timely was after [the c]ounty filed the June 3, 2002 petition to terminate parental rights, because a foster care placement proceeding and a [TPR] proceeding are two separate proceedings under [ICWA's] definition of 'child custody proceeding.'" *Id.* (citing 25 U.S.C. § 1903(1)). The North Dakota Supreme Court affirmed, holding that the district court's "interpretation of 'child custody proceeding' correctly distinguishes between proceedings for 'foster care placement' and 'termination of parental rights' and recognizes the different purposes that may trigger each proceeding." *Id.* at 632.

In *In re A.T.W.S.*, a Colorado district court adjudicated a child to be dependent and neglected in November 1988. 899 P.2d 223, 224 (Colo.App.1994). In March 1990, social services filed a TPR petition, which it subsequently withdrew. *Id.* at 226. On January 31, 1992, the date scheduled for a permanency-planning and custody hearing, the tribe moved to transfer jurisdiction. *Id.* The Colorado Court of Appeals affirmed the district court's denial of the transfer petition, holding that, al-though permanency planning had not commenced, the present dependency proceeding was at an advanced stage when the tribe filed its petition to transfer jurisdiction. *Id.* at 227.

■ Although we disagree with the district court's reasoning that the CHIPS proceeding was not at an advanced stage because neither a TPR petition nor a permanent-placement petition was pending, we affirm the district court's decision to grant the tribe's petition to transfer jurisdiction for two reasons.

First, even if the district court had concluded that the CHIPS proceeding was at an advanced stage, it was not required to deny the tribe's petition to transfer jurisdiction. ICWA does not mandate, and the BIA Guidelines do not suggest, denial of a petition to transfer jurisdiction even when good cause for denial exists. Specifically, ICWA provides that, "in the absence of good cause to the contrary, [the district court] *shall* transfer ... jurisdiction [to] the tribe." 25 U.S.C. § 1911(b) (emphasis added). But ICWA does not contain a mandate that the district court shall deny a transfer of jurisdiction when "good cause to the contrary" exists. Similarly, the BIA Guidelines provide that "[g]ood cause not to transfer the proceeding *may* exist if ... [t]he proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing." BIA Guidelines, 44 Fed.Reg. at 67,591 (emphasis added). Indeed, the Minnesota Supreme Court has acknowledged that "ICWA and Minnesota law recognize concurrent but *presumptively tribal*

---

in September 2006, well after the expiration of the statutory timeframe for establishing permanency. The lapse of time between these events makes evident the strength of the argument that the CHIPS proceeding was at an advanced stage. *See* Minn.Stat. § 260C.201, subd. 11(a) (2006) (requiring district court to commence permanency proceedings no later than 12 months after child is placed in foster care).

*jurisdiction* allowing the child's tribe to intervene 'at any point' in the state court proceedings." *T.T.B.*, 724 N.W.2d at 305 (emphasis added).

Second, the BIA Guidelines establish a promptness factor, 44 Fed.Reg. at 67,591, which, according to the BIA commentary, is intended to prevent situations in which the petitioner " 'waits until the case is almost complete to ask that it be transferred to another court and retried,' " *T.T.B.*, 724 N.W.2d at 306 (quoting BIA Guidelines, 44 Fed.Reg. at 67,590).

Here, the district court found that "[t]his isn't a situation where ... [the tribe] wait[ed to] see how the Court is going and then ... [petitioned] to transfer ... because [it was] afraid of the decision that's going to happen." This finding is supported by the record, which establishes that the tribe filed its petition in anticipation of the county filing a permanent-placement petition. The timing of the petition to transfer jurisdiction is consistent with ICWA's purposes of maintaining an Indian child's cultural and tribal ties and promoting the "stability and security of Indian tribes and families," 25 U.S.C. § 1902, which may not have been implicated to the same degree at an earlier stage in the CHIPS proceeding, and is wholly unrelated to improper forum shopping. This finding also is supported by relevant authority, including Minnesota's Tribal/State Indian Child Welfare Agreement, which provides that, although good cause to deny a transfer petition may exist if the "petition is inexcusably filed when the proceeding is already at an advanced stage," a district court must recognize that "fundamental tribal values may guide the timing by a tribe to petition for a transfer" of jurisdiction to the tribal court. Minn. Dep't of Human Res., *Minn. Tribal/State Indian Child Welfare Agreement* 6–7 (Feb. 22, 2007), http://www.dhs.state.mn.us/main/idcplg?dcService=GET_DYNAMIC_CON VERSION&RevisionSelectionMethod= LatestReleased&dDocName=id_000165.

## DECISION

On this record, the guardian ad litem has not established that the district court committed reversible error when it transferred jurisdiction to the tribal court. Because the district court's finding that the tribe did not improperly delay its petition to transfer jurisdiction is supported by the record, and because that finding alone is sufficient to support the district court's determination that there is not good cause to deny the tribe's petition to transfer jurisdiction, we affirm the district court's decision granting the tribe's motion to transfer jurisdiction to the tribal court.

**Affirmed.**